IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>HELEN  LYVUONG<br><br><br>        Debtor(s) | CASE NO. 11-09150 MCF<br>CHAPTER 7 |
| HUONGSEN PRODUCTION IMPORT &<br>EXPORT CO LTD A/K/A SENPRODIMEX<br>VIETMAN<br><br>        Plaintiff | ADVERSARY NO. 12-00014 |
| HELEN  LYVUONG<br>NOEMI  LANDRAU RIVERA ,TRUSTEE<br><br>        Defendant(s) | FILED & ENTERED ON 12/23/2013 |

## OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by the Plaintiff Huongsen Production & Export Import Co. Ltd. a/k/a Senprodimex Vietnam (hereafter "Plaintiff"), objecting to the discharge of Defendant, Helen Lyvuong (hereafter "Debtor"), pursuant to 11 U.S.C. § 523(a)(2)(A),(a)(4)&(a)(6).[1]

## UNCONTESTED FACTS

1)   Plaintiff is a limited liability company organized under the laws of Vietnam.

2)   Debtor is the sole officer and agent of SANCO Metals, LLC (hereinafter "SANCO").

3)   On July 2, 2010, Plaintiff, along with Linh Hoang and Tung Mai filed a lawsuit before the United States District Court for the District

---

[1]Unless expressly stated otherwise, all statutory references are to Title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

1

of Puerto Rico against Debtor as well as Sanco Metals LLC, Sanco Metal & Recycling Center-Puerto Rico, Michael Nguyen, Jorge P. Adorno-Del-Valle, Puerto Rico Salvage & Demolition Corp, Corporacion LAREB, Hector Ayala-Vega, Zen America Capital Corporation, Mike Hai-Tran, and Hiep Dang. (Case No. 10-1610 (SEC)).

4) On September 12, 2011, the District Court issued an Opinion and Order in favor of Plaintiff Huongsen Production Import & Export Co. Ltd. a/k/a Senprodimex Vietnam, Linh Hoang, and Tung Mai against Debtor, Sanco Metals LLC, Sanco Metal & Recycling Center-Puerto Rico, Michael Nguyen, Corporacion Lareb, Hector Ayala-Vega (collectively referred to as "SANCO Group").(Case No. 10-1610 (SEC)).

5) In the Opinion and Order, the District Court found the following uncontested facts:

A) SANCO Group and Corporación LAREB (hereinafter "LAREB") signed a contract on October 1, 2009, to acquire the rights to the metal that would later be sold to Plaintiff.

B) Plaintiff (buyer) and SANCO Group (seller) entered into an agreement for the acquisition of metal from the Lafayette Mill in Arroyo, Puerto Rico (hereinafter "the Mill").

C) As a condition prior to signing the contract, Plaintiff required SANCO Group to provide the following:

1. An Inspection Report certifying that the Mill contained approximately 30,000 tons of metal.

2. A letter from LAREB, the previous owner, as proof of SANCO Group's ownership of the Mill's metal.

2

D) As requested, SANCO Group delivered the "Inspection Report by CIS Inspection Company" to Plaintiff, validating that it contained approximately 30,000 tons of metal. The document was signed by Carlos Diah, as the person who performed the Inspection and prepared the document.

E) Subsequently, records showed that neither Carlos Diah nor CIS Inspection Company had done business in the United States or Puerto Rico during the past seven years.

F) On November 4, 2009, SANCO Group obtained an Assignment Letter from Hector Ayala, LAREB's president, stating the transfer to SANCO Group of a Sugar Plant located at Arroyo, Puerto Rico.

G) Thereafter, Jorge Adorno, SANCO Group's Regional Sales Manager at that time, presented the assignment letter to Plaintiff.

H) On November 9, 2009, Plaintiff and Debtor, in representation of SANCO, negotiated and signed the contract to purchase the metal located at the Mill. The price fixed for the transaction was $2,280,000.00.

I) On December 15, 2009, LAREB and SANCO Group signed a second contract whereby SANCO Group acquired from LAREB all the rights and assets of the Mill.

J) The aforementioned contract contained a clause whereby LAREB acquired the rights to remove the steel and scrap metal from the Mill. This contract allowed LAREB a period of six months to retrieve all the material acquired.

K) SANCO Group did not inform Plaintiff of the existence of the LAREB-SANCO Group Contract II.

3

L) "In April 2010, an estimate by Gregorio Hernandez C.E. determined the amount of metal present at the Mill to be 3,000 tons +/-50%, and '[a] virtual certainty that there are less than 15,000 metric tons of steel at the Mill.' Furthermore, portions of the Mill contained asbestos and lead."[2]

6) Based on the aforementioned undisputed facts, the District Court concluded the following:

A)   SANCO Group (including Debtor) concealed from Plaintiff that Michael Nguyen (not Diah) had prepared the Inspection Report.

B)   Diah had not done business in Puerto Rico for the last seven years.

C)   CIS Inspection Company was neither a federally registered trademark nor a copyright.

7) In the Opinion and Order, the District Court annulled the contract between Plaintiff and SANCO Group because "Plaintiff's consent, an essential element for the contract's existence, was vitiated with dolo [contractual deceit]."

8) On September 12, 2011, the District Court issued the following Partial Judgment against SANCO Group:

> Pursuant to the Opinion and Order of even date, Plaintiffs' motion for partial judgment is GRANTED in part and DEFERRED in part. Accordingly, SANCO shall pay Plaintiff the amount of $2,280,000 with their fruits, and the value with its interest.

9) Debtor did not oppose Plaintiff's Motion for Summary Judgment in the instant case.

**SUMMARY JUDGMENT STANDARD**

---

[2]U.S. District Court's Opinion and Order, Case No. 10-1610 (SEC) at page 12

4

Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In order to determine if this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1195)(citing Celotex, 477 U.S. at 324).

### COLLATERAL ESTOPPEL

Plaintiff contends that based on the Opinion and Order rendered by the District Court against Debtor, in which it granted the claims for contractual deceit, Debtor is not entitled to discharge, pursuant to § 523 of the Bankruptcy Code on the basis of collateral estoppel.[3]

Collateral estoppel, also referred to as issue preclusion, prevents the re-litigation of an issue that has been already determined in a prior court proceeding. The following four elements should be satisfied in order to invoke this doctrine: 1) the issue sought to be precluded is the same as that involved in the prior action; 2) the issue must have been

---

[3] Plaintiff mentions in passing that Debtor has violated Section 727 of the Bankruptcy Code.

actually litigated; 3) the issue was determined by a valid and binding final judgment; and 4) the determination of the issue was essential to the judgment. The party asserting collateral estoppel bears the burden of showing that it applies. In re National Med. Imaging, LLC, 439 B.R. 837 (Bankr. E.D. Pa. 2009).

The Supreme Court held in Grogan v. Garner, 498 U.S. 279 (1991) that collateral estoppel principles apply in proceedings to determine the dischargeability of a debt in bankruptcy under 11 U.S.C. § 523(a), and that a bankruptcy court can apply the collateral estoppel doctrine to those elements of the claim that are the same elements required for discharge and which were previously determined.

The factors that support the conclusion that a decision is final for the purpose of issue preclusion are the following: 1) the parties were fully heard, 2) the judge's decision is supported by a reasoned opinion, and 3) the earlier opinion was subject to review or was in fact reviewed. Restatement (Second) of Judgments, § 13 (1982)(a judgment may be "final" for purposes of issue preclusion if the earlier adjudication was "sufficiently firm to be accorded conclusive effect"); Tausevich v. Board of Appeals, 402 Mass. 146 (1988).

The District Court granted in part and deferred in part the Plaintiff's Motion for Partial Summary Judgment and issued a Partial Judgment in which it ordered SANCO Group including the Debtor to pay Plaintiff the amount of $2,280,000.00. The Opinion and Order states that Plaintiffs asked that the District Court to "defer consideration with respect to their fraud and tort claims against SANCO [Group], until after Plaintiffs have had a chance to obtain discovery on the additional facts

6

asserted by SANCO [Group]'s opposition."[4] This circumstance does not provide a conclusive effect to the District Court's Partial Judgment.

It appears that the District Court's Opinion and Order is not final pursuant to Fed. R. Civ. P. 54(b) since it did not express the language required by the statute. Rule 54(b) of Civil Procedure establishes the following:

> When an action presents more than one claim for relief-- whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Based on the fact that the District Court's decision is not final, Plaintiff has not established all the elements that the doctrine of collateral estoppel requires. Therefore, the doctrine cannot be applied to the present issue.

**EXCEPTION TO DISCHARGE**

- **False pretenses, false representation, or actual fraud § 523(A)(2)(a))**

Plaintiff alleges that the debt owed by Debtor is non-dischargeable given that it was obtained by false pretenses, false representation or actual fraud, acts proscribed by Section 523(a)(2)(A). In support of this allegation, Plaintiff contends that Debtor has been hiding behind the

---

[4]U.S. District Court's Opinion and Order, Case No. 10-1610 (SEC) at page 4 (Docket # 220).

corporate fiction in order to avoid her responsibilities and to engage in deceitful and wrongful transactions. Moreover, Plaintiff asserts that the elements necessary to prove false pretenses, false representations, or actual fraud are undeniably present in the case before this Court and have been adjudicated by the District Court.

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523 (a)(2)(A). When objecting to the discharge under § 523 (a)(2)(A), in order to establish that a debt is nondischargeable because obtained by "false pretenses, a false representation, or actual fraud," the First Circuit has held that a creditor must show that 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage. Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997). The first two elements of the Palmacci test describe the conduct required to show fraudulent conduct, and the last four stand for the requirement that the claim of the creditor objecting to discharge must arise as a consequence of the debtor's fraud. McCrory v. Spigel (In re Spigel), 260 F.3d 27 (1st Cir. 2001).

In Mitsubishi Motor Sales of Caribbean, Inc. v. Ortiz, 418 B.R. 11 (2009), the First Circuit made reference to Collier On Bankruptcy

8

for the definition of actual fraud:

> As to actual fraud, Collier On Bankruptcy P 523.08[1][e] states:
> Section 523(a)(2) covers "actual fraud" as well as false pretenses and representations.
> Actual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another -- something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. The concealment of material facts by a fiduciary may also be fraud.
> Mitsubishi, 418 B.R. at 19.

In alleging fraud, a party must state with particularity the circumstances constituting fraud. Fed. R. Bankr. P. 7009.

As established in the uncontested facts, Plaintiff and SANCO Group entered into an agreement for the acquisition of metal from the Lafayette Mill and as a condition prior to signing the contract, Plaintiff required SANCO Group to provide an Inspection Report certifying that the Mill contained approximately 30,000 tons of metal and a letter from the previous owner as proof of SANCO Group's ownership over the Mill's metal. SANCO Group delivered the "Inspection Report by CIS Inspection Company" as promised to Plaintiff, sustaining that it contained approximately 30,000 tons of metal. The document was signed by Carlos Diah, as the person who performed the Inspection and prepared the document but afterwards it was revealed that neither Carlos Diah nor CIS Inspection Company had done business in the United States or Puerto Rico during the past seven years. Finally, an estimate by Gregorio Hernandez C.E. determined the amount of metal present at the Mill to be 3,000 tons +/- 50%, and, thereby establishing that there were less than 15,000 metric tons of steel at the Mill. Additionally, portions of the Mill contained asbestos and lead.

9

The proven undisputed facts detailed above show that Debtor made false representations regarding the Inspection Report and the amount of metal supposedly sold to Plaintiff. These false representations and concealment of essential facts regarding the Inspection Report induced a justifiable reliance and as a consequence of that reliance Plaintiff suffered a pecuniary loss of $2,280,000.00. Plaintiff would not have signed the contract if it had known that the Inspection Report was false. Based on the reasons stated above, this Court can conclude that the amount of $2,280,000.00 must be excepted from discharge under § 523(a)(2)(A).

Plaintiff also objected to discharge pursuant to sections 523(a)(4) and (a)(6). However, the Court need not enter into an analysis under these subsections once having concluded that the debt is excepted from discharge under § 523(a)(2)(A).

<strong><u>CONCLUSION</u></strong>

For the reasons aforementioned, Debtor is not entitled to a discharge with respect to $2,280,000.00 owed by Debtor to Plaintiff under 11 U.S.C. § 523(a)(2)(A). Consequently, Plaintiff's unopposed Motion for Summary Judgment is granted.

SO ORDERED.

San Juan, Puerto Rico, this 23 day of December, 2013.

*Mildred Caban*

Mildred Caban Flores
U.S. Bankruptcy Judge

10